**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**
v.
**POPEIL BROTHERS, Inc., Respondent.**
No. 11102.

United States Court of Appeals
Seventh Circuit.
Oct. 1, 1954.

David P. Findling, Associate Gen. Counsel, Robert E. Ackerberg, Atty., N. L. R. B., Chicago, Ill., George J. Bott, Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Samuel M. Singer, Ruth V. Reel, Attys., N. L. R. B., Washington, D. C., for petitioner.

George B. Christensen, Fred H. Daugherty, Chicago, Ill., Winston, Strawn, Black & Towner, Chicago, Ill., of counsel, for respondent.

Before MAJOR, LINDLEY and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

This case is here upon the petition of the National Labor Relations Board, pursuant to Sec. 10(e) of the National Labor Relations Act, as amended, 29 U.S. C.A. § 151 et seq., for enforcement of its order issued against respondent on December 17, 1952, following the usual proceedings under Sec. 10 of the Act. The Board's decision and order are reported in 101 N.L.R.B. 1083. Admittedly the Board had jurisdiction of the proceedings and this court of its petition for enforcement.

The complaint alleged violations of Secs. 8(a) (1) and 8(a) (3) of the Act. After a sharply contested hearing, a Trial Examiner found and reported that respondent had committed unfair labor practices in violation of Sec. 8(a) (1) but exonerated it from any violation under Sec. 8(a) (3). The Board approved the findings of the Examiner upon which the 8(a) (1) violations were predicated but rejected his findings upon which respondent was exonerated as to the 8(a) (3) violation or, at any rate, disapproved of the Examiner's conclusion in that respect and found respondent guilty of unfair labor practices under 8(a) (3) as well as 8(a) (1).

While numerous questions are argued, we are convinced from our study of the record that the matter can be disposed of in comparatively short order. The activities from which the controversy stems commenced in August, 1950, when the Basic Processor's Union, Local 44, A. F. of L., commenced a campaign to organize the fifty or sixty employees at respondent's Sangamon Street plant in Chicago, which was engaged in the manufacture or assembly of plastic household articles. In the interest of brevity, we think it sufficient to state that the Union employed the usual and common methods in its attempt to organize the employees. Organizers distributed leaflets and Union application cards and two meetings were held, the first around September 1, and the second on the evening of September 13. By September 14, it appears that most of the employees had joined the Union and for the first time wore Union buttons. In mid-August respondent's president had refused to recognize the Union, in response to a request by a Union official. On September 9, the Union petitioned the Board for an election, which was not processed, assertedly because the Union drive collapsed on account of respondent's anti-Union campaign. It is not claimed or found, however, that respondent's refusal to recognize the Union constituted a violation of the Act.

Pertaining to the 8(a) (1) violations, the complaint in substance alleged that respondent interrogated its employees and applicants for employment regarding their membership in labor organizations, including the Union, and made threats of reprisal and promises of benefits to them in connection therewith; interrogated its employees regarding their activities in connection with the Union; induced or attempted to induce certain employees to attend the meetings of the Union for the purpose of spying on the employees and reporting such activities to respondent; from about September 1 to September 15, 1950, changed the working hours of its employees without

notice and caused them to enter and leave the plant by unaccustomed entrances in order to prevent their meeting or encountering the Union's organizers outside the plant; on two occasions assembled it employees in the plant and distributed to them certain gifts and gratuities as an inducement to abandon their Union activities; announced and put into effect wage increases, new vacation and hospitalization plans, in order to discourage Union activities by its employees; engaged in surveillance of its employees' activities with the Union; threatened certain employees with reprisals because of their activities in connection with the Union, and attempted by offer of benefit to induce certain former employees not to appear and testify at the hearing.

Respondent by its answer, while admitting certain allegations of the complaint, denied the commission of any and all unfair labor practices. The Examiner found that respondent did not engage in surveillance of its employees' activities with the Union and that it had not attempted by offer of benefit to induce certain former employees not to appear and testify at the hearing. Otherwise, the Examiner found against respondent as to the 8(a) (1) violations substantially as alleged. As noted, the Board approved such findings, and its order, in part, is predicated thereon.

■ No good purpose could be served in setting forth or discussing the testimony as it bears upon this phase of the order. It is sufficient to state that we have read it and, with one exception subsequently noted, are convinced that we would not be justified in refusing to accept the findings of the Board, particularly in view of the fact that they are consistent with those of the Trial Examiner, and this notwithstanding that we do not believe the violations are as aggravated and serious as the Board asserts. Furthermore, it may be that certain of respondent's activities, standing alone and independent of other considerations, would not, as it argues, constitute an unfair labor practice. How-

ever, the Examiner and the Board were not required to treat each item of respondent's activities separately and apart from all others, but were entitled to consider them as a whole. When so considered, we think the Board's findings are justified, at any rate that they must be accepted by a reviewing court.

As noted, one of respondent's activities which the Board and the Examiner found to be an unfair labor practice was that respondent changed the working hours of its employees without notice and caused them to enter and leave the plant by unaccustomed entrances in order to prevent their meeting or encountering the Union organizers outside the plant. Respondent in its answer denied the conclusion drawn from the incidents alleged and stated that it changed the hours of employment and gave its employees the opportunity to use various entrances and exits so that they could avoid violence at the hands of the Union agents. We think both the Board and the Trial Examiner have greatly minimized, to the detriment of respondent, the undisputed evidence as it bears upon this issue. It appears that the regular place of entrance and departure by the employees was a door which led into a narrow alley. During the organizational campaign, Union agents stationed themselves at or near this doorway, ostensibly for the purpose of interviewing employees when they departed from their work. Numerous threats of violence were directed at employees whom the Union organizers suspected of being friendly with respondent. The Board in its decision admits, "The record does show that on several occasions Union organizers uttered threats against certain named employees whom they suspected of being informants for the Respondent and that these threats were reported to the Respondent." The record shows further, however, that employees other than those suspected of being informants had been threatened. Two had been locked in the washroom and told if they came to work the next day there would be bloodshed.

The Board inferentially concedes that respondent would have been justified in taking precautionary measures as to the employees who had been threatened but that it went too far in its effort to protect other employees, in the absence of a request from them that it do so. We think the reasoning is spurious and that respondent, in view of the existing situation, was justified and perhaps charged with the responsibility of taking any reasonable steps to protect its employees from violence, including those which it did take. It can hardly be doubted that the exit suggested by respondent to its employees was safer for them as it led directly onto public sidewalks in contrast to the usual exit which placed them in an alley. The Union organizers had the same opportunity to meet the departing employees at one point as the other. The difference was that they did not have as good an opportunity to carry out their threats of violence on a public sidewalk as in the alley. In this same connection, the Examiner found that on one occasion the employees were sent home an hour early and on two occasions worked an hour late. It is not discernible how this, under the circumstances, furnishes any support to the Board's finding. The reasoning of the Board, as well as that of the Examiner, on this point of the case completely ignores, so we think, the realities of the situation. Therefore, we disapprove of the conclusion that the incidents constitute an unfair labor practice even though we recognize that it will have little, if any, effect on the Board's order as it pertains to the Sec. 8(a) (1) violations, in view of the fact that we have approved the Board's conclusions in other respects.

The complaint alleged that respondent, on or about September 14, 1950, discharged or laid off thirteen of its employees, namely, Annie Kent, Rosell Armour, Earlean Brannon, Luberta Chase, Ardelie Dumas, Velma Boston, Minnie Glenn, Beatrice Hudson, Ida Mae Johnson, Augusta Pullen, Lucille Snowden, Maude Taylor and Essie Turner, and has at all times since failed and refused, and now fails and refuses, to reinstate said employees or any of them, for discriminatory reasons, in violation of Sec. 8(a) (3) of the Act. The Board found, contrary to the recommendations of the Examiner, not that these employees were discriminatorily discharged or laid off, as alleged in the complaint, but that the failure to recall them to work was discriminatory, and ordered the reinstatement of eleven, with the usual provision for back pay. Two of the employees Augusta Pullen and Beatrice Hudson, had been reemployed, as also had Tabitha Williams, named in a previous complaint. The Examiner in his report goes into considerable detail as to each of these employees relative to their time of employment, character of work performed and their relations to respondent in general, which we see no occasion to discuss. All of those involved were short-time employees, each having been employed around six or seven weeks.

In the spring of 1950, respondent decided to remodel or renovate its plant and for this purpose it became necessary to partially cease operations and, therefore, to reduce its force. The Examiner found "that the Respondent's decision to make improvements in the plant and its decision to begin such work on September 14 was based on legitimate business reasons, neither arrived at nor precipitated by the fact that the Union was in the midst of its campaign to organize the Respondent's employees." The Board does not take issue with this finding, so it is conceded on all sides that the discharge or lay-off of the thirteen named employees was not discriminatory but was for a legitimate business reason. The selection of those to be discharged or laid off was made by respondent's production foreman, John Kujda, and there is no claim that there was any discrimination in the manner of making such selection. Twenty-one were laid off at that time, which included the thirteen involved in the proceeding. It appears that on

September 13, Kujda talked to this group of employees and explained the reason for the termination of their employment.

█ The Examiner, after a detailed review of the situation, found "that the complainants were told in substance to get other jobs during the indefinite time needed for the remodeling of the plant and to keep in touch with Kujda if they were interested in coming back; and, finally, that the only 3 who did follow up Kujda's suggestion were rehired by the Respondent." The Examiner further found that there was neither a discriminatory discharge nor refusal to reinstate the thirteen involved employees, and recommended that the complaint in that respect be dismissed. The Board, while professing to adopt the Trial Examiner's credibility resolutions, proceeds to reach a different result on what is termed its conclusions. It finds that respondent promised to recall the involved employees and that its failure to do so was because of their Union membership or activities and was, therefore, discriminatory. In the absence of a promise to recall, we think it is obvious that the Board's conclusion cannot be sustained. The Examiner's finding on this point is clearly to the effect that no such promise was made. According to the Examiner, Kujda suggested to the employees only that they keep in touch with him "if they were interested in coming back." Those who followed that suggestion were rehired. They were Union members, which is a strong indication that respondent was not pursuing a discriminatory policy in that respect. Moreover, there is no proof that those who were hired in November, 1950, when respondent resumed full operations, were non-Union. For aught that is shown by the record all those who were hired at that time might have been members of the complaining or some other Union. In fact, we find nothing in the record from which it can reasonably be inferred that respondent's failure to recall the eleven employees whom it is now ordered to reinstate was the result of discrimination. The Board's order appears to be based upon speculation and suspicion, which is not enough, particularly in view of the fact that it has embraced a factual premise contrary to that found by the Trial Examiner. It is our view that the Board's conclusion that respondent violated Sec. 8(a) (3) is without any substantial support.

The Board's petition for enforcement of its order is allowed in part and denied in part. An enforcement decree will be entered, upon request, in conformity with the views herein expressed.