**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**Irving TAITEL, Ruth Taitel and Jerome
Taitel d/b/a I. Taitel and Son, a
Partnership, Respondent.**

No. 12335.

United States Court of Appeals
Seventh Circuit.

Oct. 30, 1958.

Rehearing Denied Dec. 22, 1958.

2

Thomas J. McDermott, Associate Gen. Counsel, Washington, D. C., Sheldon M. Charone, Atty., Chicago, Ill., Jerome D. Fenton, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Fannie M. Boyls, Robert J. Wilson, Attys., N.L.R. B., Washington, D. C., for petitioner.

George Rose, Indianapolis, Ind., for respondent.

Before DUFFY, Chief Judge, HASTINGS, Circuit Judge, and WHAM, District Judge.

HASTINGS, Circuit Judge.

This case comes before us upon the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 29 U.S.C.A. § 151 et seq.) for enforcement of its order [1] issued against respondent [2] on December 14, 1957, following the usual proceedings under Section 10 of the Act.

In substance, the Board found that respondent interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Section 8(a) (1) of the Act by threats to employees that it would close its plant if the union [3] succeeded in organizing its employees; by offering a supervisory job to an employee if he abandoned his union activities; by unlawful interrogation of employees and solicitation of their assistance to combat the union's efforts to organize the plant; and by the solicitation of employees to abandon a strike, called by the union after respondent had refused to bargain. The Board further determined that the union represented a majority of respondent's employees in the unit found to be appropriate at the time of the alleged violations, and that, in denying the union's request for recognition and insisting upon a Board ordered election, respondent was not motivated by any good faith doubt as to the union's majority status, but was moved by a desire to gain time in which to undermine the union and dissipate its strength, thereby violating Section 8(a) (5) of the Act.

To remedy the foregoing, the Board ordered respondent to cease and desist from the unfair labor practices found and from, in any other manner, interfering with its employees' rights guaranteed

in Section 7 of the Act. It affirmatively ordered respondent to bargain collectively with the union upon request to do so and to post the appropriate notices.

The contested issue is whether there is substantial evidence in the record as a whole to support the several findings of the Board as above set out.

Since respondent's contentions are predicated solely upon the question of the sufficiency of the evidence on the record as a whole to support the Board's findings, we seem required again to state "that the Act vests in the Board, and not in the courts of review, the duty of appraising conflicting evidence, drawing inferences from established facts and circumstances, and resolving issues of fact," and that our function "is limited to determining whether there was substantial evidence to support the Board's findings of fact," and that if there was then "these findings cannot be disturbed on review." National Labor Relations Board v. Aintree Corporation, 7 Cir., 1942, 132 F.2d 469, 472. We are not, however, to take lightly the warning of Judge Major in his dissenting opinion in that case (at page 473), that, in following such a rule, courts of appeal are not to be mere rubber stamps, there still remaining the necessity for a solid foundation of proof to be found in the record. As Judge Lindley stated in National Labor Relations Board v. Wagner Iron Works, etc., 7 Cir., 220 F.2d 126, 133, certiorari denied, 1955, 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 850: "Ultimately, whether enforcement is to be decreed depends primarily on whether the findings are supported by substantial evidence 'when viewed in the light that the record in its entirety furnishes,'" citing Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.

1. The Board's decision and order are reported at 119 N.L.R.B. No. 124.

2. Respondent is Irving Taitel, Ruth Taitel and Jerome Taitel d/b/a I. Taitel and Son, a partnership. Respondent is engaged in the manufacture, sale and distribution of trousers and jackets at Knox, Indiana, where the alleged unfair labor practices occurred. It is admitted that respondent is engaged in commerce within the meaning of the Act.

3. General Teamsters, Chauffeurs and Helpers Union, Local 298, I.B.T. & H. of A.

**4**

The record fairly and adequately establishes that, during the interval between the union's request for recognition and the first meeting between respondent and the union, and during the progress of the strike following nonrecognition, respondent engaged in the tactics above found by the Board to constitute interference with and restraint and coercion of its employees in their exercise of the rights guaranteed them under Section 7 of the Act. We see no point in burdening this opinion by reciting the testimony which gives rise to our conclusion as to its sufficiency.

This court has held rather decisively that such conduct on the part of an employer is in violation of Section 8 (a) (1) of the Act. Threats to close a plant if the union succeeds, National Labor Relations Board v. Aintree Corporation, supra; threats of reprisal and promise of benefits for repudiating union, National Labor Relations Board v. Popeil Brothers, 7 Cir., 1954, 216 F.2d 66, 67–68; coercive interrogation of employees as to their union activities and membership, National Labor Relations Board v. Wagner Iron Works, etc., supra; Indiana Metal Products Corp. v. National Labor Relations Board, 7 Cir., 1953, 202 F.2d 613, 619–620; solicitation of employees to combat the union and to break a strike called for unfair labor practices, National Labor Relations Board v. Bradley Washfountain Co., 7 Cir., 1951, 192 F.2d 144, 152–153, have all been held to be in violation of Section 8(a) (1).

The record shows that on the critical date there were 96 employees in the unit for which recognition was sought, making 49 employees a majority. It further shows that employees in the unit executed authorization cards which were identified and introduced in evidence at the hearing. Respondent refused to check the signatures on these cards when requested to do so at its first meeting with the union, and at the hearing it did not contest their genuineness. Respondent did, however, contend that the signed cards reflected a coerced majority because the union waived initiation fees for all employees who joined while the union was being organized and represented it would charge a fee of $25 for those who joined later. A union may be designated as a bargaining representative by the signing of authorization cards, National Labor Relations Board v. Geigy Co., Inc., 9 Cir., 1954, 211 F.2d 553, 556; Reliance Mfg. Co. v. National Labor Relations Board, 7 Cir., 1942, 125 F.2d 311, 314–315; and the waiving of the fees during the organizational period does not smack of coercion but rather of promotional persuasion. The testimony of the employees lends no color to a finding that their signatures were other than voluntary. To be considered also is the fact that a substantial majority of the employees supported the unfair labor practices strike. We hold that there was substantial evidence to support the Board's finding that, at the time of its request for recognition, the union represented a majority of the employees in an appropriate unit. National Labor Relations Board v. Dahlstrom Metallic Door Co., 2 Cir., 1940, 112 F.2d 756.

Finally, was the refusal of the employer to recognize the union predicated upon a good faith doubt as to the union's majority status, or was it motivated by a desire to gain time to undermine the union and dissipate its strength? Since respondent vigorously contends that there was no substantial evidence that it was acting other than in good faith in seeking a Board ordered election as the alternative to the showing of majority status on the card count, we shall consider the findings made on that proposition.

At the first meeting between respondent and the union when recognition was requested, the record establishes the following: When its majority representation was questioned, the union offered the signed cards for checking and respondent refused. Respondent requested the union to make known its bargaining demands, and the union refused to do so until it was granted recognition, whereupon respondent offered to open its books to show its alleged weak financial condi-

tion and inability to meet any demand for pay increases. Respondent demanded a Board ordered election, and the union suggested an election either under state supervision or by supervision of a neutral party and this was rejected. Respondent then rejected an offer to enter into an agreement for a consent election to be conducted by the Board but assigned no reason for insisting on a Board ordered election. The meeting was then ended and two days later the strike for recognition began. The strike was in progress from March 19, 1956 until April 10, 1956 when the employees returned to work. The strike was supported by a majority of the employees in the bargaining unit. On March 20, 1956 respondent for the first time, in a published newspaper advertisement, assigned as its reason for refusing recognition the issue of waiver of payment of union dues. On April 26, 1956 the union again demanded recognition and requested respondent to bargain, and to this respondent failed to reply. These circumstances, coupled with the unfair labor practices heretofore found to have occurred prior to the first meeting of the parties, afford substantial evidence to support the finding of the Trial Examiner and the Board on this issue adversely to respondent and their conclusion that respondent was in violation of Section 8(a) (5) of the Act. Franks Bros. Co. v. National Labor Relations Board, 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; National Labor Relations Board v. Chicago Apparatus Co., 7 Cir., 1940, 116 F.2d 753, 758–759; National Labor Relations Board v. Clearfield Cheese Co., Inc., 3 Cir., 1954, 213 F.2d 70, 74.

It is clear that "an employer may rightfully withhold recognition from a union possessed of majority status and request an election to confirm its accreditation if there is a *bona fide* doubt of a majority. Where the refusal is merely to afford time to take action to dissipate the majority, it constitutes a violation of the duty to bargain set forth in Section 8(a) (5) of the Act (citations omitted) * * *." National Labor Relations Board v. Epstein, 3 Cir., 1953, 203 F.2d 482, 484. In the instant case it should be remembered that most of the actions under review occurred contemporaneously with the union organization campaign. Under such circumstances, respondent's unfair labor practices can hardly be divorced from its attitude of nonrecognition.

The petition of the Board for enforcement of its order is granted, and the Board's order will be enforced.