**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The HOWE SCALE COMPANY, Respondent.**

No. 13825.

United States Court of Appeals
Seventh Circuit.

Jan. 2, 1963.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Melvin J. Welles, Janet Kohn, Attys., National Labor Relations Board, for petitioner.

Mervin N. Bachman, Chicago, Ill., for respondent.

Before CASTLE and SWYGERT, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

This case is before the court on petition for enforcement of the order of the National Labor Relations Board against respondent.

The Board found that respondent withdrew recognition from and refused to bargain with the Union (District No. 8, International Association of Machinists) and discharged Shop Steward Edward J. Spicer in order to discourage membership in the Union and undermine its majority status in violation of Sections 8(a) (5), (3), and (1) of the National Labor Relations Act. The Board also found a violation of Section 8(a) (1) in respondent's promises of increased benefits if its employees abandoned the Union and bargained directly with the respondent.

In August 1956, the Union was certified as exclusive bargaining representative of respondent's Chicago service employees, and annual written contracts were negotiated thereafter. In 1958, respondent suggested that a "more effective relationship" would be possible if dealings were "informal," i. e., without a written contract. The parties then agreed orally to carry forward the provisions of their last written contract.

In the spring of 1959, Shop Steward Spicer and employee Brown were given merit increases. Employee Karpinski asked District Manager Haskins why he had not received a raise. Karpinski's testimony, credited by the trial examiner, was that Haskins suggested that he might be able to get the employees more money if they did not have the Union as their bargaining agent. There was also credited testimony of Shop Steward Spicer that in the summer of 1959, Personnel Director Zitzmann sought to persuade Spicer of the desirability of having the men deal directly with respondent rather than through the Union. Zitz-

mann told Spicer that under such an arrangement, respondent would be in a better position to grant wage increases and better working conditions.

In June 1960, the Union sent its customary letter notifying respondent of its intention to reopen the contract and requested early negotiations. Respondent failed to acknowledge this letter. About July 27, 1960, having heard nothing from respondent, Union representative Britt and Spicer called upon Haskins and presented their contract proposals. Haskins told them that he no longer had authority to negotiate; that the proposals should be sent to the home office at Rutland, Vermont. The proposals of the Shop Committee were then sent to Personnel Director Zitzmann at Rutland, Vermont. Zitzmann called Haskins in Chicago to "find out what was behind this" and "who was the Shop Committee." Haskins replied it was Spicer.

During this same conversation, Haskins told Zitzmann of a "threat" that Spicer had made to an employee, Thomas H. Clemens, to the effect that he (Spicer) could "make it pretty rough" if Clemens did not join the Union. Zitzmann later notified Willie Jensen, Service Manager and Spicer's immediate supervisor, that Spicer was to be discharged at the close of work the next day. Zitzmann cautioned Jensen "not to go into details, to give any reasons or to discuss any reasons." Zitzmann's alleged reason for this caution was that Jensen was not familiar with labor relations, and he didn't want Jensen to be drawn into a long discussion in which his words might be misinterpreted or misunderstood.

On the same day that Spicer was discharged, Zitzmann sent a letter to Union representative Britt after Britt had written to Zitzmann a second time enclosing proposals for a new contract. In this letter Zitzmann formally refused to meet with the Union "unless you are certified," because the company "For some time * * * has had reason to believe" that the Union did not represent a majority of the employees.

On Monday, August 15, 1960, Spicer and Britt, who had not yet received Zitzmann's August 12th letter withdrawing recognition, asked Haskins why Spicer had been fired. Haskins said he knew nothing about it and suggested they call Zitzmann in Vermont. Britt called Zitzmann who refused to discuss the matter, and reiterated his unwillingness to talk with the Union representatives unless the Union obtained a current certification, and proposed that the Union petition for a Board election. Britt replied that an election was unnecessary since the Union already represented a majority, and that any effort to decertify the Union should come from the employees rather than from the Union.

■ With regard to the defenses raised by respondent, it is pointed out that Section 8(c) of the Act makes the use of opinions, views, or arguments inadmissible as evidence of unfair labor practices if they contain no threat of reprisal or force or *promise of benefit*. Respondent submits that the expressions by Haskins and Zitzmann that individual bargaining would be better for its Chicago servicemen come within the scope of Section 8(c). This contention is not tenable since there is substantial evidence in the record that Haskins and Zitzmann did more than express their opinions. Karpinski testified that Haskins suggested he could get the employees more money if they did not have the Union as their bargaining agent. In addition, Spicer testified that Zitzmann tried to impress on him that if the men would deal directly with the company, it would be in a better position to grant wage increases and better working conditions. Such *promises of benefits* in exchange for abandoning the Union constitute a violation of Section 8(a) (1) of the Act. Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 684–685, 64 S.Ct. 830, 88 L.Ed. 1007 (1944) ; N. L. R. B. v. Taitel, 261 F.2d 1, 3–4 (7th Cir. 1958), cert. denied 359 U.S. 944, 79 S.Ct. 725, 3 L.Ed. 2d 677; N. L. R. B. v. Popeil Brothers, Inc., 216 F.2d 66, 67–68 (7th Cir. 1954)

■ With regard to the finding that respondent violated Sections 8(a) (5) and (1) of the Act by its refusal to recognize and bargain collectively with the Union, respondent's defense is that it had a good faith doubt as to the Union's continued majority status. Such a doubt is a proper defense but only where the doubt has a rational basis in fact. N. L. R. B. v. John S. Swift Company, Inc., 302 F.2d 342, 346 (7th Cir. 1962).

The evidence established that there were six employees in the appropriate bargaining unit as of August 12, 1960, the date of respondent's final refusal to bargain with the Union. As of that date, respondent was withholding Union dues pursuant to voluntary checkoff authorizations signed by four of the six employees. Respondent discontinued the dues checkoff as of September, and the four employees continued to tender their dues directly to the Union. If Spicer is excluded as having been properly discharged, a majority of the employees in the bargaining unit (three out of five) were Union members on August 12, 1960, and at the time of the hearing. Therefore, the Union in fact at all times represented a majority of the employees in the appropriate unit. Respondent nevertheless claims a "good-faith" doubt existed as to the Union's continued majority status for the following reasons:

1. Zitzmann had heard nothing from the Union since the fall of 1959.

2. When a wage increase was given in November 1959, the Union did not "object" or "thank" respondent for it.

3. Haskins had reported in the spring of 1960 that employees Brown and Spicer had expressed disinterest in the Union.

The trial examiner and the Board rejected these reasons as not being explanatory of respondent's failure to recognize the Union. It was pointed out that during this period the parties were operating under the terms of a contract concluded in the fall of 1959, so it is irrelevant if respondent had heard nothing from the Union until June of 1960 when the Union sought to reopen that contract.

The fact that respondent continued to check off Union dues of four of the six employees, pursuant to their voluntary authorization, is a further indication that respondent had no reasonable doubt of the Union's majority status. Cf. N. L. R. B. v. Auto Ventshade, Inc., 276 F.2d 303, 307 (5th Cir. 1960).

As to the alleged report that employees Brown and Spicer had lost their interest in the Union, there was no testimony to corroborate this assertion. Brown was not called upon to confirm Zitzmann's testimony, and Spicer specifically denied the statements attributed to him indicating dissatisfaction with the Union. As will be later brought out, Spicer tried to get Clemens to join the Union. Respondent, while expressing doubt because of an indicated belief that Spicer was one of the two who had become disenchanted with the Union, discharged him on the alleged basis that he threatened a co-employee in order to get the co-employee to join the Union.

Finally, respondent's failure to answer Britt's letter of June 25, 1960, requesting the opening of negotiations is not consistent with good-faith doubt. No response was made until August 12th after Britt had written a second time, and respondent's answer then was to refuse to negotiate and simultaneously to discharge Spicer. As the trial examiner stated, "Good-faith doubt would have dictated immediate response stating candidly the Respondent's position."

There is also a finding that respondent discharged Shop Steward Spicer in implementation of its unlawful purpose of undermining the Union's prestige, influence, and majority status in violation of Sections 8(a) (3) and (1) of the Act. The trial examiner and the Board recognized that unquestionably an employee may be discharged for threatening another employee. The examiner concluded that the alleged incident with employee Clemens was seized upon as a "pretext," when in fact the reason for the discharge of Spicer was to undermine the Union. This court has often held that even though a valid ground for discharge exists, there is nevertheless an unfair labor practice if in fact the reason for the discharge was Union activities on the part of the employee. Sunshine Biscuits, Inc. v. N. L. R. B., 274 F.2d 738, 742 (7th Cir. 1960); N. L. R. B. v. Deena Products Co., 195 F.2d 330, 334–335 (7th Cir. 1952), cert. denied 344 U.S. 827, 73 S.Ct. 29, 97 L.Ed. 644. There is substantial evidence supporting the finding that the true reason for Spicer's discharge was his Union activities summarized as follows:

Spicer was the Union's representative in the shop and was an employee of eight years' standing whose services had never been criticized. Spicer was discharged without explanation on the same day that Zitzmann refused to meet with the Union unless and until it obtained a new certification from the Board.

It was Spicer to whom Haskins proposed that the men "drop the Union" in return for increased benefits, but Spicer rejected that offer, suggesting instead that the parties pursue the negotiations already sought by the Union.

In addition, by relieving local officials of any authority in the matter, respondent made it difficult for Spicer or anyone on his behalf to discuss his discharge except by long distance telephone or letter to Zitzmann in Vermont. The presentation of such alternatives is not reflective of good faith.

Zitzmann conducted no investigation about the threat by Spicer to employee Clemens. This threat is virtually admitted and would be ground for Spicer's discharge. See N. L. R. B. v. Kaye, 272 F.2d 112 (7th Cir. 1959). In that case the Board found that an employee had been discharged for engaging in union activities, whereas the employer claimed he was discharged for criticizing other workers for turning out too much work. The court reversed the Board's finding that the employer had no knowledge of this criticism, stating that this finding was based on "a dubious inference, in face of direct and positive evidence to the contrary."

Respondent contends that the finding of a discriminatory discharge is based on an inference which cannot be upheld in the face of direct testimony that Spicer had threatened Clemens. Respondent overlooks the important fact that the trial examiner must look at the totality of the circumstances. In the Kaye case, supra, the court found no proof of any anti-union bias or activity by the respondent, whereas here the refusal to recognize or bargain with the Union was found to go hand in hand with Spicer's discharge.

It appears that the examiner and the Board could reasonably conclude that the discharge of Spicer was motivated by a desire to undermine the Union in violation of Sections 8(a) (3) and (1) of the Act. We cannot find that the Board's findings are without substantial support in the evidence.

The Board's petition for a decree enforcing its order is hereby Granted.