**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LARRY FAUL OLDSMOBILE CO., Inc., Respondent.**

**No. 13985.**

United States Court of Appeals Seventh Circuit.

April 30, 1963.

**596**

Marcel Mallet-Prevost, Asst. Gen. Counsel, Lee M. Modjeska, Atty., National Labor Relations Board, Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Allison W. Brown, Jr., Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Murray B. Woolley, Frederick W. Turner, Jr., Chicago, Ill., for Larry Faul Oldsmobile Co., Inc.

Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and MERCER, District Judge.

HASTINGS, Chief Judge.

This matter is before us on petition of National Labor Relations Board (Board) for enforcement of its order against respondent, Larry Faul Oldsmobile Co., Inc.

Respondent is engaged in the retail sale of new and used automobiles in Oak Park, Illinois where the events involved in this case occurred.

The Board found that respondent violated § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (5) and (1), by refusing to recognize and bargain with union.[1] The Board also found that respondent violated § 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1), by interrogating its employees concerning their union membership and activities, by threatening employees with reprisals for engaging in union activity and by promising more favorable treatment to induce employees to abandon their union activity. The Board's decision and order are reported at 138 N.L.R.B. No. 81.

The Board's order requires respondent to cease and desist from the unfair labor practices found, and from in any like or related manner interfering with, restraining, or coercing its employees in the exercise of their statutory rights. Affirmatively, the Board's order requires respondent to bargain with union upon request, and to post appropriate notices.

Respondent's only contention is that the Board's decision is not supported by substantial evidence on the record considered as a whole.

In the fall of 1961, a campaign was begun to organize respondent's automobile salesmen. Respondent employed six such salesmen and by November 18, 1961, all of them had signed cards authorizing union to represent them for collective bargaining. On November 21, respondent received a letter from union advising respondent of its majority status and requesting a bargaining meeting. In this letter, union offered to submit the cards to a mutually agreeable third party for verification of the signatures. Respondent did not respond to this letter.

On December 9, 1961, respondent received another letter from union, *transmitting the six union authorization cards* and requesting a bargaining meeting. Respondent's president, Lawrence P. Faul, was satisfied on this date of the authenticity of the signatures on all of

---

**1.** The union involved is International Vehicle Salesmen's Union of America (Ind.).

the cards. On December 12, respondent wrote union: "I do not believe that you represent a majority of my salesmen. Accordingly, I see no reason for a meeting." There was no meeting between respondent and union.

■ We agree with the Board that respondent refused to bargain with union on December 12 in violation of § 8(a) (5) and (1) of the Act. We find unconvincing the arguments advanced by respondent that its president harbored a good faith doubt of the majority status of union on December 12. A proper and satisfactory analysis of the refusal to bargain issue appears in the trial examiner's report which was adopted by the Board. We deem it unnecessary to repeat such analysis here.

■ Several days after respondent's president refused union's request for a bargaining meeting, he called Charles Burian, one of the salesmen, into his office. Burian was asked why the men had joined the union. In the course of the conversation which ensued, Faul proposed that Burian talk to the other salesmen and submit a written list of their grievances. At the close of this conversation, Faul promised to settle the grievances to the employees' satisfaction.

The Board found that by this conversation respondent violated § 8(a) (1) of the Act. Such finding is supported by substantial evidence on the record considered as a whole. This questioning with respect to union membership occurred after Faul became convinced that the signatures on the authorization cards were genuine. Thus, the questioning is not permissible as reasonable interrogation to ascertain whether Burian had in fact signed an authorization card. It could only have had as its purpose an intent to probe into the reasons for Burian's adherence to union. Faul's proposal that Burian consult with the other salesmen concerning their grievances and the promise to take corrective action in response thereto was clearly an allurement to induce defection from union. National Labor Relations Board v. Taitel, 7 Cir., 261 F.2d 1, 3 (1958), cert. denied, 359 U.S. 944, 79 S.Ct. 725, 3 L.Ed.2d 677; National Labor Relations Board v. Bailey Co., 6 Cir., 180 F.2d 278, 279 (1950).

■ On November 21, 1961, immediately after respondent received union's first letter demanding recognition and bargaining, Lawrence J. Faul, the son of respondent's president and supervisor of new car salesmen, asked Burian and Emil Kush, both new car salesmen, whether or not they had joined union. On December 9, after respondent received union's second demand for recognition and the signed authorization cards, the elder Faul sent a supervisor to ask salesman Hugh Zeeh whether or not he had signed the card which bore his signature.

The Board found these interrogations interfered with the employees' rights. We cannot agree. These interrogations were spontaneous responses by respondent to the letters from union claiming majority status. They were not systematic or methodical. The employees were not called into the employer's office to be quizzed. Burian was questioned as he was walking toward the younger Faul's office; Kush was questioned in his office; and Zeeh was questioned in the used car office. We do not find here a "campaign of harassment" which was present in N. L. R. B. v. M. J. McCarthy Motor Sales Co., 7 Cir., 309 F.2d 732 (1962).

Examined in the light of the circumstances in which they occurred, we must conclude that substantial evidence does not support the Board's findings that the questioning of these three salesmen was illegal. The interrogations were reasonable to ascertain the validity of union's claim. National Labor Rel. Bd. v. Wagner Iron Works, Etc., 7 Cir., 220 F.2d 126, 139 (1955); Blue Flash Express, Inc., 109 N.L.R.B. 591 (1954).

■ We cannot agree with the Board's contention that these incidents are violative of § 8(a) (1) of the Act because not accompanied by assurances to the employees that they will suffer no reprisals because of the response given. See Frank Sullivan and Company, 133 N.L.R.B. 726, 727 (1961); Burke Golf

Equipment Corporation, 127 N.L.R.B. 241, 245 (1960), enforcement denied, 6 Cir., 284 F.2d 943. The failure to give such assurances, as in the instant case, is one of the circumstances to be considered but not to the exclusion of all others. All the circumstances surrounding these three interrogations lead us to conclude that respondent's sole purpose was to ascertain the validity of union's claim.

The Board held that respondent violated § 8(a) (1) of the Act by threatening, in a conversation with John J. Redden, a used car salesman, to dispose of the business in response to the union activities of its employees. Redden had been given notice of his discharge early in November. It was to be effective a month later. Late in November he went to the elder Faul's office to shake hands and say goodbye. In response to a leading question, Redden testified that Faul had said that since the union was in "he might as well as throw the place up for grabs."

■ Faul's statement was merely an expression of exasperation to a departing employee who had come in for a final visit. It was clearly not meant or taken as a threat to close the business. See Cone Brothers Contract. Co. v. National Labor Rel. Bd., 5 Cir., 235 F.2d 37, 41 (1956), cert. denied, 352 U.S. 916, 77 S.Ct. 214, 1 L.Ed.2d 122. Furthermore, there is no evidence that any salesman other than Redden, who had already been discharged for cause, knew of the statement. And he must have attached little importance to the statement, for he had to be prompted with a leading question before he could recall the statement. Under these circumstances, substantial evidence does not support the Board's finding that Faul threatened to close his business, thereby interfering with, restraining or coercing his employees in violation of § 8(a) (1) of the Act.

■ In his intermediate report, the trial examiner discussed respondent's membership in and contributions to the Chicago Automobile Trade Association. While it is clear to us that the Board did not rely on respondent's relationship with this organization in finding respondent guilty of unfair labor practices, we wish to make it clear that such relationship, without more, could not constitute an unfair labor practice.

The decision we have reached in this case necessitates revision of the Board's order and notice to employees. Paragraph 1. (c) of the order is amended to read: "(c) Promising employees benefits to induce them to abandon their Union activities." The equivalent portion of the notice to employees is amended by deleting the following: "threaten that we will liquidate our operations rather than deal with a union, or."

We hold that the Board's order, as modified herein, will be enforced.

Enforcement ordered.