**DON THE BEACHCOMBER, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 21704.

United States Court of Appeals
Ninth Circuit.

Feb. 7, 1968.

M. J. Diederich (argued), Sweeney, Cozy & Foye, Los Angeles, Cal., for appellant.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Assistant Gen. Counsel, Allison W. Brown, Jr., Vivian Asplund, Attys., N.L.R.B., Washington, D. C.; Gerald Ansell, Richman, Garrett & Ansell, Ralph E. Kennedy, Director NLRB, Los Angeles, Cal., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and GRAY, District Judge.

MERRILL, Circuit Judge:

Adopting findings, conclusions and recommendations of a trial examiner, the National Labor Relations Board, in a decision reported at 163 N.L.R.B. No. 36 (1967), has determined that petitioner engaged in unfair labor practices by:

1. Coercive conduct in violation of § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1), designed to defeat the efforts of a union[1] to secure representative status with respect to certain of petitioner's employees; and

2. Refusal to bargain collectively with the union in violation of § 8(a) (5) of the Act, 29 U.S.C. § 158(a) (5).

The Board accordingly has ordered petitioner to cease and desist from its unfair labor practices, to bargain with the union and to post appropriate notices. Petitioner seeks review under § 10(f) of the Act and to have the order set aside. The Board cross-petitions for enforcement.

In March, 1966, the union sought to secure representative status through obtaining authorization cards from petitioner's employees at its Palm Springs, California, restaurant. It secured cards from 26 out of 52 employees. On March 8, 1966, it represented to petitioner that "an overwhelming majority of your employees have signed authorization cards." It requested a meeting to discuss a collective bargaining agreement and offered to submit the authorization cards for third-party verification. Petitioner contends that it entertained doubt whether the union could legitimately claim representation and for this reason its service manager was sent to investigate the truth of this claim. On March 11, the union sent a follow-up letter to petitioner, again claiming majority status and offering to submit to an impartial card check. On March 15 it filed a representation petition with the Board. Petitioner responded on the same day expressing doubt as to the union's majority status and its preference for an election. On March 29 the union filed unfair labor practice charges against petitioner.

*Coercive conduct.*

 The conduct charged as coercive consisted principally of statements made by petitioner's service manager in the course of his investigation. The service manager, Aranas, spoke to his brother-in-law, Jordan, and learned that Jordan had signed a card. At Jordan's suggestion a meeting of waiters and bus boys, all long known to Aranas, was held at Jordan's home so that they could explain to Aranas why they had signed cards. At this meeting Aranas, after stressing that those present were free to join the union if they wished, remarked that the union might require employees to work no more than five or six days a week, or require overtime pay, and that the employer might thereby feel required to cut down on overtime, reducing the amount which the employees might expect to receive in the way of tips. He also remarked that the union might require the company to change its waiter-rotation system under which senior waiters were entitled to serve the better tables.

These statements were not threatening. They were predictions of what might result from unionization as a consequence of union demands and were protected comment under § 8(c) of the National Labor Relations Act. NLRB

---

[1]. Culinary Workers, Bartenders and Hotel Service Employees, Local 535, AFL–CIO.

v. TRW-Semiconductors, Inc., 385 F.2d 753 (9th Cir. 1967); NLRB v. Golub Corp., 388 F.2d 921 (2d Cir. 1967); Southwire Co. v. NLRB, 383 F.2d 235 (5th Cir. 1967).

 The Board also found instances in which Aranas asked employees whether they had signed union cards (or was told why they had signed them) to be coercive "polling" of employees prohibited by § 8(a) (1). It is clear from the record that whatever polling of views took place at the meeting mentioned above was done by Jordan, who was a union advocate rather than petitioner's agent. Nor is there any support in the record for the finding that Aranas' asking of three employees, including his brother-in-law, whether they had signed cards was, under the circumstances, coercive. Often the only manner in which an employer can support his good-faith doubt of union majority is by investigation. As long as his inquiry is not undertaken in a threatening manner, either open or implied, such an attempt to avert § 8(a) (5) charges should not without more render an employer subject to attack under § 8(a) (1). See NLRB v. S. S. Logan Packing Co., 386 F.2d 562 (4th Cir. 1967).

We have fully reviewed the other incidents which the Board assigns as coercive and conclude that the Board's finding of a § 8(a) (1) violation in this case is unsupported by substantial evidence.

*Refusal to bargain.*

This charge is founded upon a determination that petitioner did not entertain a good-faith doubt as to the union's majority status, which determina-

tion in turn was based upon inference drawn from petitioner's allegedly coercive conduct.[2] Since the conduct was not coercive there is no basis whatsoever for the inference of bad faith. Petitioner's dispatching of the service manager to investigate the union claim might well, on the contrary, be adduced as a positive act indicating a good-faith doubt. NLRB v. S. S. Logan Packing Co., supra.

The petition of Don the Beachcomber is granted and the order of the Board is set aside. The cross-petition of the Board is denied.

2. The trial examiner stated in his opinion: "Respondent bases its doubt of the Union's majority status on statements made by employees at the Jordan meeting as to why they signed union authorization cards, and on the experience and belief of Respondent's legal counsel that employees frequently sign authorization cards for reasons other than an intent to appoint a union as their bargaining agent; but in view of the coercive conduct of Service Manager Aranas, I cannot find that this doubt was held in good faith." This policy of using § 8(a) (1) violations to support a § 8(a) (5) charge is explained by the Board in Aaron Brothers, 158 N.L.R.B. No. 108 (1966). See generally Lesnick, Establishment of Bargaining Rights Without an NLRB Election, 65 Mich.L.Rev. 851 (1967).