NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The DEUTSCH COMPANY, METAL COMPONENTS DIVISION, Respondent.

No. 26334.

United States Court of Appeals, Ninth Circuit.

June 24, 1971.

Rehearing Denied Oct. 8, 1971.

Jesse I. Etelson (argued), Paul J. Spielberg, Attys., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., for appellant.

Michael D. Koomer (argued), of Cooper, Wyatt, Tepper & Plant, Los Angeles, Cal., Aiken, Madden & Associates, San Marino, Cal., J. E. Daniels, C. S. West, Industrial Union of Marine & Shipbuilding Workers, San Pedro, Cal., for appellee.

Before DUNIWAY and ELY, Circuit Judges, and BYRNE,* District Judge.

WILLIAM M. BYRNE, District Judge:

The National Labor Relations Board ("the Board") found, in agreement with the Trial Examiner, that The Deutsch Company, Metal Components Division ("the Company"), violated Section 8(a)(1), of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(1)[1] by coercively interrogating employees concerning their union activity at its Los Angeles plant, by invoking an invalid prohibition against union solicitation and by soliciting employees to revoke their union authorization cards.[2] Pursuant to Section 10(e) of the Act, 29 U.S.C. § 160(e), this case is before the Court upon petition of the Board for enforcement of its order directing the Company (1) to cease and desist from engaging in the proscribed conduct which is the subject of its findings and (2) to post appropriate notices. The Board also seeks enforcement of its order setting aside the representation election of August 22, 1968, and directing the Regional Director to supervise a second election.

In March, 1968, the Union[3] began an organizing campaign at the Company's

---

* Honorable William M. Byrne, United States District Judge, Los Angeles, California, sitting by designation.

1. Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), provides:
"(a) It shall be an unfair labor practice for an employer—
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;"

2. The Board reversed the Trial Examiner's finding that the Company further violated Section 8(a)(1) by granting a wage increase on August 5, seventeen days before the representation election.

3. Industrial Union of Marine and Shipbuilders Workers of America, AFL–CIO.

Los Angeles plant. Shortly thereafter, Peter Hanly, the Company's personnel director, engaged three employees in a conversation during their lunch break. According to Ray Rodriguez, a former employee of the Company described by the Trial Examiner as "one of the leading adherents of the union among the employees," Hanly stated "that he heard there was going to be a union meeting and that he heard that the union organizers were giving $25.00" for each signed authorization card. Albert Matas, one of the employees to whom Hanly addressed his remarks, corroborated Rodriguez' account of this conversation.[4]

Hanly admitted inquiring of these employees about the place of the purported union meeting and whether they were being paid for submitting signed authorization cards, but maintained these inquiries were made in a jesting fashion. Because of the surrounding circumstances the Board found this conversation to be neither amusing nor lawful.

Viewed as an isolated incident, Hanly's innocuous questions, which apparently were directed at learning whether these employees supported the Union's organizational efforts, would not be considered violative of Section 8(a) (1) of the Act. To this effect the Courts have ruled on numerous occasions. N.L.R.B. v. Hotel Conquistador, Inc., 398 F.2d 430 (9th Cir. 1968); Don the Beachcomber v. N.L.R.B., 390 F.2d 344 (9th Cir. 1968); Salinas Valley Broadcasting Corp. v. N.L.R.B., 334 F.2d 604 (9th Cir. 1964); Beaver Valley Canning Co. v. N.L.R.B., 332 F.2d 429, 433 (8th Cir. 1964); N.L.R.B. v. Larry Faul Oldsmobile Co., 316 F.2d 595, 597 (7th Cir. 1963); Lincoln Bearing Co. v. N.L.R.B., 311 F.2d 48, 51 (6th Cir. 1962). In light of the evidence adduced at the hearing, we are persuaded that it would be imprudent to consider this case as another such occasion.

It is well settled that an employer's interrogation of employees constitutes an unfair labor practice under Section 8(a) (1) when it is associated with threats, be they express or implied, or promises, or "form(s) part of an overall pattern tending to restrain or coerce employees with regard to their protected activities." Amalgamated Meat Cutters, etc. Local No. 364 v. N.L. R.B., 435 F.2d 668, 669 (9th Cir. 1970); Don the Beachcomber v. N.L.R.B., 390 F.2d 344 (9th Cir. 1968); N.L.R.B. v. McCatron, 216 F.2d 212 (9th Cir. 1954), cert. den. 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738 (1955). Here, the conversation in question, which included a patently unlawful statement regarding the prohibition of union solicitation on Company property, must be viewed as another dimension in the panorama of unlawful antiunion activity which served as the Company's response to the organization campaign. In this context, it is clear that Hanly's interrogation comes within the well settled rule. Santa Fe Drilling Co. v. N.L.R.B., 416 F.2d 725, 728 (9th Cir. 1969); N.L.R.B. v. Little Rock Downtowner, Inc., 414 F.2d 1084, 1093 (8th Cir. 1969); N.L.R.B. v. J. Taylor Mart, Inc., 407 F.2d 644, 646 (7th Cir. 1969).

According to Rodriguez and Matas, during the conversation now in controversy, Hanly stated that Company policy prohibited any kind of solicitation on Company property. Hanly denied this account of the conversation claiming instead that he "told them it was against Company rules to distribute or to solicit, solicitation of any kind during working hours on Company premises." The Company's personnel director also asserted that he referred the employees to the booklet, "Employees Handbook, Deutsch," for further guidance as to the Company's rules regarding on premises solicitation.[5] The Trial Examiner

---

4. Danny Guirl, the third employee who was present during the course of this conversation did not testify.

5. Hanly's reference is to the following rule found on page eighteen of the Company's booklet: "Solicitation: There will

"found that Hanly gave a mistakenly restrictive statement of the Company's no-solicitation rule" and thus concluded that the Company had invoked "an invalid no-solicitation rule," a violation of Section 8(a) (1) of the Act. The Board adopted the Trial Examiner's finding and conclusion.

■ The decision of the Board to resolve the conflicting testimony by crediting that of Rodriguez and Matas is binding on this Court. N.L.R.B. v. Holly Bra of Calif., Inc., 405 F.2d 870 (9th Cir. 1969). Accordingly, it is without dispute that the all encompassing no-solicitation rule which Hanly promulgated is violative of Section 8(a) (1) of the Act. Republic Aviation Corp. v. N.L.R.B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); N.L.R.B. v. Essex Wire Corp., 245 F.2d 589 (9th Cir. 1957).

The Company has attempted to extricate itself from the morass of legal precedent by claiming that "the entire context surrounding Hanly's reference proves that the employees knew they were merely being advised of the old lawful rule." According to the Company, during the five month interval between Hanly's statement and the representation election the plant milieu was free of any reference to or enforcement of the no-solicitation rule in controversy. Illustrative of this position is the acknowledgment by employee Ignacio Vasquez that he freely circulated union authorization cards during his non-working periods.

■ Save the testimony of Hanly, which the Board, as the *true* trier of fact, chose not to credit, the record is devoid of any evidence which supports the Company's contention that the three "employees knew they were being advised of the old lawful rule." Because the record fails to disclose any credible evidence which indicates that Hanly instilled in the employees the impression that he was merely reiterating the "old lawful rule," we must reject, what is in effect, the Company's invitation to sit as a super trier of fact. As already explained, a court of review may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." N.L.R.B. v. Walton Mfg. Co., 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962).

■ The evidence relating to employee Vasquez' circulation of union cards in no way contradicts our position. According to Vasquez, his sole effort on behalf of the union consisted of meeting requests for authorization cards made by twenty employees who, *unsolicited*, had approached him during non-working periods. The unassuming nature of Vasquez' activity strongly suggests that the Company was unaware of its occurrence. Indeed, the record's total silence on the matter of the Company's knowledge of such conduct lends considerable support to this inference. Absent evidence that the promulgation of the unlawful no-solicitation rule was nothing more than an inadvertent slip of the Company's tongue, we remain satisfied that the Board's finding should not be disturbed. The Company's failure either to notify employees of its rescission of the rule, or to impart in them the belief that Hanly's statement was not an accurate reflection of its policy, created the impression that one acted at his peril if he engaged in lawful union activity. That such a labor practice is unfair as defined by the Act is well settled.[6] Jas.

---

be no solicitation on Company property unless specific approval is granted by the Personnel Department." Because the Board made no finding with regard to this rule, the question of its validity is not now before the Court.

6. In light of our ruling, it is, of course unnecessary for us to take up the Board's

"safety valve" argument that "even if Hanly's version of the incident is credited," i. e., he told the employees soliciting was prohibited "during working hours," the finding of a Section 8(a) (1) violation "is entitled to stand."

H. Matthews & Co. v. N.L.R.B., 354 F.2d 432 (8th Cir. 1965), cert. den. 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015 (1966). See, Food Store Employees Union, Local 347, Amalgamated Meat Cutters, etc., v. N.L.R.B., 135 U.S.App.D.C. 341, 418 F.2d 1177 (1969); N.L.R.B. v. Walton Mfg. Co., 289 F.2d 177 (5th Cir. 1961).

On April 1, 1968, the Company mailed to its employees a letter informing them that a union authorization card could be revoked if it were signed due to misinformation, coercion or intimidation. The employees were also told that a forged authorization card was ground for revocation. In order to facilitate revocation, the Company enclosed a post card addressed to the Board which contained a statement which rescinded the union authorization card.

Approximately seven weeks later, May 20, 1968, Philip Holzman, the Company's president, sent a letter to the employees which again afforded them, by way of enclosed post cards, similar to those which were a part of the April 1 mailing, the opportunity to "withdraw" their authorization cards. The Company president concluded his letter with the following observation:

> "In my opinion the relationship as it presently exists at Deutsch is much better than the promises being made by these Union organizers which everyone knows will not be kept.
>
> "To those of you who support my position and continue to do so, and have not signed a card—many thanks."

■■ The Board's finding that the Company's letter of May 20, 1968, violated Section 8(a) (1) is completely consistent with the established rule that an employer cannot engage in conduct calculated to erode employee support for the union. In Amalgamated Clothing Workers of America v. N.L.R.B., 137 U.S.App.D.C. 330, 424 F.2d 818, 824 (1970), the Company's president spoke to his employees and "plainly solicited and urged (them) to repudiate the Un-

ion and provided the necessary information, *together with form letters* of resignation from the Union * * *" (Emphasis added). The court held that such conduct was in violation of Section 8(a) (1) of the Act. Similarly, in N.L.R.B. v. Priced-Less Discount Foods, Inc., 405 F.2d 67, 69 (6th Cir. 1968), the Company was found to be in violation of Section 8(a) (1) because it had solicited letters to its employees urging withdrawal from the union and because it had "assisted in the preparation and mailing of letters for the deliberate purpose of dissipating the Union's strength and to frustrate its employees' right of self-organization * * *" See, Retail Clerks International Association v. N.L.R.B., 125 U.S.App.D.C. 389, 373 F.2d 655 (1967), where the Company violated Section 8(a) (1) when it "encouraged and assisted its employees to repudiate the [Union] by filing decertification petitions." (657).

In the instant case it is readily apparent that the thrust of the Company's mailing was to undermine employee support for the union. Given the state of the law, the Board's action of condemning this practice as a violation of Section 8(a) (1) is beyond reproach.

■ It must be noted that our decision to support the Board's finding was reached only after considering the Company's contention that the letter of May 20, 1968, was written in response to reports it had received that union adherents and organizers were engaged in acts of coercion and intimidation designed to win union acceptance. Our review of the records satisfies us that the Trial Examiner's rejection of this assertion is factually correct. Accordingly, we adopt his analysis as our own:

> "The Company presented the employees who testified to the so-called 'coercion and harassment' * * * The Trial Examiner must conclude that these incidents had no quality of coercion or intimidation and were of a most trivial nature. It would be hard to imagine an election in which there

were nearly 300 participating employees, where there occurred less coercion and harassment than in this election. The worst incident of the so-called coercion occurred when two union adherents said to one employee 'You had better sign up now, or not go to work.' In another single incident a union adherent told an employee that if he didn't sign an authorization card, he might not have a job after the Union won * * * Here, no one was struck a blow, threatened with a blow or physical violence or threatened with serious reprisal for not signing a card. And indeed, any statement which borders upon coercion must be viewed as an isolated statement by one individual to another."

The Order of the Board shall be enforced in full.