**BLAYLOCK ELECTRIC, a sole proprietorship, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 95–70931.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 11, 1997.*

Memorandum Aug. 1, 1997.

Order and Opinion Aug. 19, 1997.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and 9th Cir. R. 34–4.

Mark R. Thierman, Thierman Law Firm, San Francisco, CA, for petitioner.

Paul A. Ades, National Labor Relations Board, Washington, DC, for respondent.

Before: HUG, Chief Judge, THOMPSON and KLEINFELD, Circuit Judges.

## ORDER

The Memorandum disposition filed August 1, 1997, is redesignated as an authored Opinion by Chief Judge Hug. The dissent to the Memorandum disposition by Judge Kleinfeld is withdrawn.

## OPINION

HUG, Chief Judge

Appellant Blaylock Electric appeals from the denial by the National Labor Relations Board ("the Board") of its application for an award of fees under the Equal Access to Justice Act, 5 U.S.C. § 502 *et seq.* ("EAJA"). Blaylock was the prevailing party in an unfair labor practices action brought by General Counsel for Region 32 of the Board ("General Counsel"). We have jurisdiction under 29 U.S.C. § 160(f) and 5 U.S.C. § 504(c), and we affirm.

### I.

Blaylock is a commercial electrical contractor located in Modesto, California. In the Summer of 1994, Blaylock anticipated being awarded several contracts at the Campbell's Soup factory in Modesto, and in contemplation thereof ran an ad in the local newspaper for two electrician positions to cover a manpower shortage it expected to encounter if the contracts were awarded.

One June 8, 1994, about twelve applicants appeared at Blaylock's office to apply for the positions listed in the newspaper. Most of these applicants were members of the IBEW, Local 684, AFL–CIO, ("the Union") located across the street from Blaylock. Each filled out an application and presented it to Blaylock's receptionist, Tina McKee. Each of the applicants indicated on their applications that they were affiliated with the Union, or otherwise made their union affiliation known to Blaylock. The applicants contend that the receptionist made a comment to the effect that if she knew the applicants were Union members, she would have told them there were no jobs available.

Blaylock never filled the positions for which it advertised. It contended that it failed to hire anyone because it was awarded only six of the ten jobs for which it bid, and therefore did not need any full-time employees. Instead, Blaylock obtained temporary help from a local agency as need arose.

On July 18, 1994, the Union filed an unfair labor practice charge with the NLRB Region 32 office, alleging that Blaylock failed to hire the Union applicants based upon their status

as union members. After correspondence between Region 32 and Blaylock, on October 4, 1994 General Counsel issued a complaint alleging discrimination based upon union membership. The hearing before an ALJ occurred between January 26, and February 9, 1995. On March 15, after the hearing and the day before post-hearing briefs were due, General Counsel withdrew its complaint.

On April 13, Blaylock filed an application for EAJA fees. On July 21, 1995 the ALJ issued an opinion denying the application, and on December 11, 1995 the NLRB affirmed the ALJ's rulings.

## II.

■ The EAJA provides that the prevailing party in adversary adjudication before an agency of the federal government be awarded attorney's fees, unless the position of the agency was "substantially justified" or special circumstances would make such an award unjust. 5 U.S.C. § 504(a)(1); *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988). The agency's position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person." *Mester Mfg. Co. v. I.N.S.,* 900 F.2d 201, 204 (9th Cir.1990) (quoting *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2549).

Blaylock argues that General Counsel was not substantially justified (1) in issuing the complaint, (2) in proceeding to trial on the merits, and (3) in waiting more than one month after the hearing to withdraw its complaint. The Board disagreed, and denied the fee petition. The Board's decision to deny the award may be disturbed on appeal only if the court determines that "the failure to make an award ... was unsupported by substantial evidence." 5 U.S.C. § 504(c)(2). Thus, the question we must answer is whether substantial evidence supports the Board's determination that General Counsel was substantially justified in prosecuting this action. We conclude that it does.

### A. Issuance of complaint

■ Section 8(a)(3) of the NLRA prohibits an employer from discriminating against employees "in regard to hire or tenure of employment ... to ... discourage membership ... in any labor organization." 29 U.S.C. § 158(a)(3). In wrongful refusal to hire cases such as this one, the Board uses a burden-shifting scheme set forth in *Wright Line, a Division of Wright Line, Inc.,* 251 NLRB 1083 (1980). First, General Counsel bears the burden of making a prima facie showing that unlawful discrimination was a motivating factor in the employer's decision not to hire. The elements of this prima facie showing are (1) employment applications by alleged discriminatees; (2) the employer's refusal to hire the alleged discriminatees; (3) the alleged discriminatees' support or potential support of the union; (4) the employer's knowledge or suspicion that the alleged discriminatees were actual or potential union supporters; (5) the employer's hostility to the idea of union representation of its employees; and (6) that the employer was hiring or seeking to hire employees at the time or after it received the discriminatees' applications. *WestPac Electric, Inc.,* 321 NLRB No. 172 (1996), 1996 WL 511845 at * 36 (1996 NLRB).

■ If the General Counsel meets this prima facie burden, thus creating an inference that union animus was a motivating factor in the decision to hire, the employer must then demonstrate that it would have made the same decision in the absence of the discriminatees' union affiliation. *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 402–03, 103 S.Ct. 2469, 2474–75, 76 L.Ed.2d 667 (1983).

■ Substantial evidence supports the Board's conclusion that General Counsel was substantially justified in filing the complaint and proceeding to trial.[1] General Counsel

---

1. Blaylock contends that the ALJ erred when it used General Counsel's answer to the EAJA application in considering the question of Blaylock's cooperation prior to the hearing, without requiring General Counsel to disclose all of its files so that Blaylock could determine whether General Counsel did or could have received this information in some other way. However, Blaylock did not raise this objection before the ALJ, and the Board was correct when it concluded that Blaylock had forfeited the argument by not raising it below. *See NLRB v. George Koch &*

possessed the following evidence that tended to establish a prima facie case of unlawful discrimination: (1) Blaylock sought through a newspaper advertisement to employ two full-time electricians; (2) some twelve union-member job applicants responded to the advertisement and submitted applications for the positions; (3) each applicant was affiliated with the union and indicated in some way that affiliation when applying for the job; (4) none was interviewed or hired; (5) shortly after the alleged discriminatees applied for the jobs, Blaylock obtained substantial electrician services through a local temporary labor agency; and (6) Blaylock hired two full-time electricians during the Summer of 1994.

■ Further supporting the inference of union animus was the evidence that Tina McKee, Blaylock's receptionist and the person who responded to inquiries about the job openings, made a statement indicating that, had she known these applicants were union supporters, she would have told them that Blaylock was not accepting applications for work. Blaylock vehemently contends that McKee was not an agent of Blaylock and that any statements that she might have made cannot be imputed to her employer. However, the test for agency under the Act "is whether, under all the circumstances, an employee would reasonably believe that the alleged agent was speaking for management and reflecting company policy." *House Calls, Inc.*, 304 NLRB 311 (1991); 1991 WL 170286 at *1 (1991 NLRB). In *Diehl Equipment Co.*, 297 NLRB 504 (1989), 1989 WL 224491 at *1 (1989 NLRB), the Board found agency where a receptionist's duties included handing out and receiving applications, and answering questions regarding the applications: "the [employer] had placed [the receptionist] in a position in which she had the apparent authority to provide information and to answer questions relative to the application forms she handled." *Id.* at *1 n. 2. Based upon the evidence and NLRB precedent, General Counsel could reasonably have contended that McKee was Blaylock's agent

and thereby imputed her comment to Blaylock.

Blaylock contends that, even if General Counsel had a reasonable basis for believing initially that a prima facie case could be proven, it knew or should have known of facts that would have convincingly refuted the inference that Blaylock's refusal to hire was motivated by anti-union animus. Thus Blaylock puts forth the following scenario. Blaylock submitted bids on ten jobs at the Campbell's Soup factory and, in expectation of obtaining those jobs, advertised for two full-time electricians. However, when four of the ten jobs were not awarded, including a large freezer job for which Blaylock would have needed the two full-time electricians, Blaylock decided not to hire any of the applicants and instead used the Labor Connection, a local temporary agency, as need arose. Blaylock had used the Labor Connection several times in the past. Furthermore, one of the two full-time hires that Blaylock made during the Summer of 1994 was a personal friend of Blaylock's owner Jim Blaylock.

However, the Board concluded that Blaylock failed to provide sufficient evidence to General Counsel prior to trial to establish the truth of Blaylock's version of the events and rebut the inference of discrimination. For example, Blaylock provided a letter from Campbell's Soup to the effect that Blaylock did not receive four of the ten jobs for which it had bid. But the letter did not establish the relative size and scope of the unsuccessfully bid projects or otherwise establish that the lost bids were to be the basis for Blaylock's hiring through the newspaper advertisement. Further, the payroll records submitted by Blaylock revealed that it had hired two full-time electricians during the Summer of 1994, and did not provide any evidence to support the contention that one was a personal friend of Jim Blaylock. Additionally, General Counsel learned prior to trial that Blaylock had previously used the Labor Connection, but did not know the circumstances

---

*Sons Inc.,* 950 F.2d 1324, 1336–37 (7th Cir. 1991). In any event, General Counsel is correct in its assertion that Congress did not intend an EAJA fees determination to involve "additional evidentiary proceedings or additional discovery

of agency files, solely for EAJA purposes." *United States v. Certain Real Estate Property,* 838 F.2d 1558, 1565 (11th Cir.1988) (quoting H.R.Rep. No. 120, 99th Cong., 1st Sess. 13, reprinted in 1985 U.S.Code Cong. & Admin. News 132, 142).

of that prior relationship such that it would refute the inference that Blaylock used the Labor Connection in this instance to avoid hiring union affiliates.

Finally, although General Counsel learned prior to the hearing that Blaylock had not hired any of the applicants, union and non-union alike, General Counsel could reasonably have believed that Blaylock declined to hire any applicants with the intent of keeping union applicants out while covering up its anti-union animus. This theory was supported by the fact that Blaylock did hire two full-time electricians during the Summer of 1994 and used the Labor Connection for a substantial amount of work on the awarded Campbell's Soup projects.

■ Blaylock counters that it was General Counsel's responsibility to investigate more completely to uncover the evidence that would have refuted the inference of discrimination. Blaylock contends that General Counsel could have compelled Blaylock to turn over whatever records General Counsel thought it needed, and could have procured records from the Labor Connection regarding Blaylock's prior use of that agency. However, while General Counsel has an obligation to investigate prior to filing and pursuing charges, where, as here, General Counsel requests information from the employer [2] and the employer's proffer fails to rebut the evidence of discrimination, General Counsel is substantially justified in proceeding to hearing. *See Quality C.A.T.V., Inc. v. NLRB*, 969 F.2d 541, 545 (7th Cir.1992) (pursuit of complaint to hearing substantially justified where "[p]reliminary evidence did suggest the possibility" that the complaint was valid); *Lion Uniform, Inc. v. NLRB*, 905 F.2d 120, 125 (6th Cir.1990) (General Counsel substantially justified where employer failed to present evidence to refute charges until trial on merits); *Leeward Auto Wreckers,*

*Inc. v. NLRB*, 841 F.2d 1143, 1148 (D.C.Cir. 1988) (same).

### B. Proceeding through Trial

■ The Board concluded that General Counsel's evidence, if credited by the fact finder, would have been sufficient to establish a prima facie case at trial. The Board further noted that Blaylock presented rebuttal evidence that significantly undercut General Counsel's case: that Blaylock had used the Labor Connection on several occasions before, that several non-union applicants were never interviewed for the advertised positions, that Jim Blaylock failed to hire from this applicant pool because of economic considerations, that Jim Blaylock had previously hired union members, that one of the temporary electricians referred by the Labor Connection was the Union's business agent, and worked for Blaylock without incident, and Tina McKee's denial of the anti-union statements attributed to her.

■ The Board further noted that, in light of the unrefuted evidence that Blaylock failed to hire any of the applicants, General Counsel's case rested entirely on the theory that Blaylock decided not to hire any applicants because it wished to avoid hiring union affiliates, while covering up its anti-union animus.[3] The ALJ opined that General Counsel was unlikely to prevail on this theory on the merits, but that the ultimate determination would depend upon whether he credited testimony of Jim Blaylock and Tina McKee. Because of this, he concluded, General Counsel was substantially justified in pursuing the case through trial, notwithstanding the relative weakness of its case.

The Board was correct to conclude that nothing presented at trial foreclosed General Counsel's claim, such that any reasonable person would have dropped the charge at that point. In light of General Counsel's

---

2. General Counsel requested that Blaylock provide copies of the Campbell's Soup bids, the written denials of the bids that Blaylock did not win, and payroll records from June 8, 1994 through August 24, 1994 "for the purpose of verifying that [Blaylock] has not hired additional employees." Blaylock was urged to "promptly present to the Board Agent any and all evidence relevant [to the] investigation."

3. General Counsel need not prove that there was a position open in order to establish a violation of section 8(a)(1) or (3); an employer violates the Act when it fails even to consider an applicant because of his or her union affiliation. *See Cine Enterprises*, 301 NLRB 446, 1991 WL 19234 at *4 (1991).

prima facie showing, and the fact that the power of Blaylock's rebuttal case depended in substantial part on the ALJ's decision (which he never reached) whether to credit Jim Blaylock's and Tina McKee's testimony,[4] we affirm the Board's determination that General Counsel was substantially justified in pursuing the case through trial. *Compare Quality C.A.T.V., Inc.*, 969 F.2d at 545 (while General Counsel was substantially justified in filing charge, the evidence adduced at trial rendered General Counsel's theory "unsupportable," and thus its continued pursuit of the case unreasonable) *with Leeward Auto Wreckers, Inc.*, 841 F.2d at 1148 (General Counsel reasonably relied on information in filing complaint, but given employer's "uncontrovertible defense" presented at trial, "[a]ny lingering uncertainty about the case should have evaporated" and General Counsel should have withdrawn the charge).

### C. Post-trial delay

▉ Blaylock contends that General Counsel was not substantially justified in waiting until 35 days after trial to withdraw its complaint. The Board rejected this contention, based upon the following considerations. First, even at the close of trial it was not certain that General Counsel would lose its case; much depended upon the credibility of Blaylock's rebuttal testimony, which the ALJ had yet to determine. Further, the parties were involved in post-trial discussions regarding a stipulation as to the sizes of two projects that Campbell's Soup had awarded Blaylock's competitors. The Board concluded that, based upon these considerations and upon the Board's lack of standards regarding post-trial timing issues and "the fact and legal issues involved," General Counsel's delay was not unreasonable.

Blaylock's objections to this finding are unavailing. First, Blaylock argues that General Counsel withdrew the charge based upon the evidence that Blaylock submitted, after trial, that the freezer job that Blaylock did not get was a "long-term" job for which it would require the two full-time electricians it sought through the newspaper ad. Blaylock contends that General Counsel could have obtained that information earlier from Campbell's Soup. However, whatever General Counsel's subjective reason for finally determining that it should withdraw the charge, it is the *objective* reasonableness of the delay that matters here. Blaylock's argument does not address the ALJ's finding that General Counsel's post-trial delay was objectively reasonable.

Second, Blaylock contends that the Board, by excusing General Counsel's delay in part because of the Board's lack of post-trial timing standards, in effect placed the burden of substantial justification on the prevailing party rather than on the agency, where it belongs. However, both the ALJ and the Board explicitly stated that they placed the burden on General Counsel, and found that General Counsel had met that burden. Thus, while General Counsel's delay cannot be excused by reference to the agency's lack of timing criteria, the Board's conclusion, that General Counsel's delay was reasonable, is supported by the Board's other findings in that regard.

### III.

Substantial evidence supports the Board's determination that General Counsel was substantially justified in pursuing this charge at every stage of the proceedings.

**AFFIRMED.**

---

4. The ALJ noted that Tina McKee did not testify until the final day of trial. Further, General Counsel asserts that "essentially all" of Jim Blaylock's exculpatory testimony was presented towards the very end of the hearing. Blaylock does not contest either of these assertions. The timing of the presentation of this testimony supports the conclusion that General Counsel was substantially justified in pursuing the action through completion of the trial.