NATIONAL LABOR RELATIONS BOARD, Petitioner,

and

Service Employees International Union Local 32B–J, Intervenor

v.

YONKERS ASSOCIATES, 94 L.P. Respondent.

No. 04–2889–AG.

United States Court of Appeals, Second Circuit.

Argued: June 1, 2005.

Decided: June 6, 2005.

Publication Ordered: July 20, 2005.

Margaret A. Gaines, Settlement Director; Ruth E. Burdick, Attorney, National Labor Relations Board, Washington, D.C. (Arthur F. Rosenfeld, General Counsel; John E. Higgins, Jr., Deputy General Counsel; John H. Ferguson, Assoc. General Counsel; Aileen A. Armstrong, Deputy Assoc. General Counsel, on the brief), for Petitioner.

Larry Engelstein, Lyle Rowan, New York, New York; James B. Coppess, Washington, D.C., for Intervenor.

Joel E. Cohen, McDermott Will & Emery, New York, New York, for Respondent.

Before: STRAUB, HALL, Circuit Judges, and KAPLAN, District Judge.[1]

PER CURIAM.

The National Labor Relations Board ("Board") brought this petition, pursuant to 29 U.S.C. § 160(e), to enforce its December 4, 2003, Decision and Order against Respondent Yonkers Associates ("Yonkers"). We assume the parties' familiarity with the facts, decision below, and issues on appeal. For the reasons that follow, we grant the Board's petition.[2]

In December 1993, Yonkers, which owns, operates, and rents apartment buildings, purchased a building whose previous owner had employed Jose Borbon, Francisco Machado, and Ariel Rivera under a collective bargaining agreement with their union, Local 32E, Service Employees International Union ("Local 32"). Yonkers initially refused to hire Borbon, Machado, and Rivera because of their union membership. Subsequently, Yonkers offered them jobs on its own terms, which they accepted. The Board's General Counsel issued a complaint alleging unfair labor practices under the National Labor Relations Act ("Act"), and on September 29, 1995, the Board issued a decision finding Yonkers in violation of the Act and directing Yonkers to 1) bargain with Local 32, 2) restore its employees' previous terms and conditions of employment, and 3) make them whole for any losses suffered as a result of Yonkers' initial refusal to hire them and subsequent unilateral alteration

---

1. The Honorable Lewis A. Kaplan, United States District Judge, Southern District of New York, sitting by designation.

2. Our decision on this appeal originally appeared in an unpublished summary order, issued on June 6, 2005. The Board subsequently moved to have the decision published. Because we are persuaded that this decision may have some precedential value, we grant the motion and publish our disposition.

of their terms of employment, from the time Yonkers refused to hire them to the time Yonkers reached a new collective bargaining agreement with Local 32.

Yonkers complied in part with the Board's order and reached a collective bargaining agreement with Local 32 in April 1998, but objected that it should not have to pay back wages calculated under the old collective bargaining agreement because its employees had willingly accepted new, less favorable terms of employment. On March 30, 2001, the Acting Regional Director issued a compliance specification and notice of hearing. On December 4, 2003, the Board awarded summary judgment against Yonkers, holding: 1) that, because Yonkers failed to file an answer that specifically controverted the allegations in the compliance specification, these allegations were deemed to be admitted as true; and 2) that Yonkers' defense against the backpay award would fail at any rate, principally because the September 29, 1995, order, which Yonkers did not appeal, required Yonkers to restore the status quo *prior to* Yonkers' illegal conduct. On May 17, 2004, the Board filed the instant application for enforcement of its order.

Shortly before the Board's final decision, on November 23, 2003, Yonkers fired Machado for poor job performance. Machado, represented by Local 32, filed a statutory unfair labor practice charge, which the Board dismissed, and a grievance based on the collective bargaining procedure. On May 21, 2004, four days after the Board's application to enforce its decision concerning Yonkers' unfair labor activities in 1994, the parties reached a settlement of Machado's 2003 grievance, memorialized in a handwritten agreement "in settlement of Machado's claim regarding his discharge as the superintendent." Under this settlement, in return for $2500 and Yonkers' agreement to allow Machado to remain in his apartment owned by Yonkers with his rent based on "household family income," Machado "release[d] Yonkers, its affiliates, employers and agents of all claims he has or may have against Yonkers concerning his employment with Yonkers and his discharge by Yonkers."

Yonkers informed the Board of this settlement in a letter dated June 30, 2004, and asserted that the settlement extinguished the Board's award with respect to Machado. Regional Director Celeste J. Mattina responded by a letter dated September 27, 2004, that the settlement did not cover the Board's outstanding award because "[t]here was never any specific discussion during settlement negotiations regarding the pending enforcement case nor did the union, the charging party in the instant matter, understand that the grievance settlement would also serve to remedy the monies owed to Mr. Machado in the instant case." Mattina further observed that the Board was not obligated to honor a settlement agreement that had not been approved by it.

In the present application by the Board for enforcement of its 2003 order, Yonkers asserts the following grounds against enforcement: 1) that the Board erred in deeming the compliance specification allegations to be admitted; 2) that the Board erred in calculating backpay amounts based on the previous collective bargaining agreement rather than on the terms under which the employers returned to work in March, 2003; and 3) that the Board's award is unenforceable with respect to Machado because he subsequently waived that award in his May 21, 2004, settlement.

In recognition of the Board's expertise in interpreting and applying the Act, our review of its orders is highly deferential. "We must enforce the Board's order where its legal conclusions are reasonably based, and its factual find-

ings are supported by substantial evidence on the record as a whole." *NLRB v. Katz's Delicatessen, Inc.*, 80 F.3d 755, 763 (2d Cir.1996). The Board's chosen remedy in a given case, moreover, "is subject to limited judicial review, and will not be overturned if it may fairly be said to have as its purpose ends that will effectuate the policies of the Act." *Elec. Contractors, Inc. v. NLRB*, 245 F.3d 109, 122 (2d Cir.2001) (quotation marks omitted).

With these principles in mind and after a full review of the record, we grant the Board's application. Regardless of whether the Board correctly deemed Yonkers to have admitted the compliance specification allegations, the Board nonetheless *considered* and rejected Yonkers' only affirmative argument: that the regional office incorrectly calculated the backpay due. With respect to that affirmative argument, Yonkers has acknowledged that it did not appeal the Board's September 29, 1995, order requiring backpay based on the terms of the collective bargaining agreement in effect before Yonkers violated the Act. To its own detriment, Yonkers sought instead to reopen the unfair labor practice hearing and, failing that, waited again and challenged the backpay award only in response to the Board's Compliance Specification. *See Paolicelli*, 335 NLRB 881, 883 (2001) ("Issues litigated and decided in an unfair labor practice proceeding may not be relitigated in the ensuing backpay proceeding.").

■ At any rate, Yonkers' arguments as to the reasonableness of the Board's approach are meritless. Yonkers argues that the Board's calculation of backpay based on the previous collective bargaining agreement was impermissibly punitive because Yonkers was not bound by that agreement and was free to negotiate its own terms with its employees, which in fact it did. Instead, Yonkers argues, the Board should have taken as its benchmark the terms under which the employees agreed to return to work at the building. Yonkers bases this argument on dicta in *NLRB v. The Staten Island Hotel Ltd. P'ship*, 101 F.3d 858, 862 (2d Cir.1996) that "[i]f it were possible to determine the terms of employment contracts to which former employees might have agreed, we might prefer an award of backpay at those hypothetical contracts' rates."

Yonkers reads *Staten Island Hotel*'s dicta incorrectly. After the dicta quoted, *Staten Island Hotel* found that, notwithstanding some conceivable hypothetical in which an employer lawfully hired workers against which it had previously discriminated and lawfully established new terms of employment for them (*i.e.*, by recognizing and bargaining with their union), "the fact is that the Company made its hiring decisions on a basis that unlawfully discriminated against former employees on the basis of their union membership, and it is hardly clear what terms would have been reached had the Company not so discriminated." *Id.* Read thus in context, *Staten Island Hotel* clearly holds that a successor employer's *illegally*-set employment terms cannot provide the basis for an alternative measure of the backpay due for Act violations. Here, as in *Staten Island Hotel*, Yonkers' employment practices continued to violate the Act for over four years until, under Board order, Yonkers negotiated a new collective bargaining agreement with Local 32 in April 1998. Thus, we have no certain measure of the terms which would have been fixed in 1994 in the absence of Yonkers' violations, and the risk of that uncertainty falls on Yonkers. *See id.*

■ Finally, as for Yonkers' argument that we should deny the Board's petition with respect to Machado, we find no precedent supporting judicial modification of a Board award based on a settlement

agreement reached in the context of an unrelated employment dispute, over Board objection and in the absence of Board involvement in negotiating the settlement or a prior "motion [before the Board] of one or both of the parties to defer to a settlement agreement," *Indep. Stave Co.,* 287 N.L.R.B. 740, 741, 1987 WL 90112 (1987). Had Yonkers made such a motion and had the Board simply seconded Ms. Mattina's opinion that the settlement should not be enforced against earlier, adjudicated claims because such had not been the parties' reasonable understanding when they signed the settlement, such a disposition would have been a proper exercise of the Board's undisputed discretion not to defer to settlement agreements that are inconsistent with the aims of the Act (and by extension, not to construe ambiguous settlement agreements in such a way as would be inconsistent with the Act). *See Beverly Cal. Corp. v. NLRB,* 253 F.3d 291, 295 (7th Cir.2001) (under established Board precedent, "a General Counsel's and Charging Party's opposition to a settlement [is] a powerful reason to disregard the settlement").

We have considered all of Yonkers'. arguments and find them meritless. Accordingly, we GRANT the Board's application to enforce its order of December 4, 2004.