**CNP MECHANICAL, INC.,**
Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD, Petitioner.**

No. 06–4304–ag.

United States Court of Appeals,
Second Circuit.

March 12, 2008.

Anthony J. Adams, Jr., Gates & Adams, P.C., Rochester, NY, for Respondent.

Richard A. Cohen, Senior Attorney, National Labor Relations Board, Washington, D.C., for Petitioner.

Present: ROSEMARY S. POOLER, DEBRA ANN LIVINGSTON, Circuit Judges, and LEWIS A. KAPLAN, District Judge.[1]

## SUMMARY ORDER

Petitioner National Labor Relations Board ("NLRB") filed a petition, pursuant to 29 U.S.C. Section 160(e), in this Court on September 15, 2006 seeking enforcement of its May 31, 2006 Decision and Order ("the Order") finding that Respondent CNP Mechanical, Inc. ("CNP") had violated provisions of the National Labor Relations Act ("the Act"), 29 U.S.C. Section 151 *et seq.* CNP timely filed objections to the enforcement of the Order.

CNP, a plumbing contractor based in Hilton, New York, is managed and owned by Charles Natalello. Allegations that CNP had violated provisions of the Act were filed with the NLRB in 2002 by Local 13 of the United Association of Plumbers and Pipefitters ("Local 13"), which had been attempting to organize CNP's workforce for a number of years. At all relevant times, Local 13's "business representative"—the official who leads its organizing efforts—has been James Caternolo.

In the first half of 2002, Local 13 attempted to organize CNP by sending several of its members to apply for employment with the company. Local 13 alleged before the NLRB that eleven of its members, including Caternolo himself, were denied employment at CNP in the first three weeks of April 2002, and that three months later CNP discharged two employees who

[1]. The Hon. Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

were union members because of their organizing efforts at a CNP job site. Local 13 also alleged that Natalello and his administrative assistant, Lisa Legler, took a number of actions indicative of CNP's desire to maintain an open shop. In its answer to Local 13's complaint, CNP countered that, at all relevant times, it "had no need to supplement its work force and was not hiring new employees."

A three-day hearing on Local 13's allegations was conducted on February 3–5, 2003 by Administrative Law Judge Margaret M. Kern. In her Decision, dated June 24, 2004, ALJ Kern found in favor of Local 13 on all of its allegations, save for the firing of one of the two union members. That is, ALJ Kern found that CNP had violated the Act by: (1) making statements indicative of a company policy to refuse to hire union members; (2) making threats of discharge to CNP employees for actions relating to Local 13's organizing efforts; (3) failing to hire the eleven union member applicants at a time when it had hired non-union applicants; and (4) firing one employee who was a union member for engaging in organizing efforts protected under the Act.

It is particularly relevant to the instant appeal that ALJ Kern recognized that her judgment rested upon "major credibility issues" regarding the testimony of witnesses for CNP and Local 13. She found Local 13's witnesses to be credible based upon their demeanor and their consistent testimony throughout the proceedings. By contrast, she evaluated Natalello's credibility in the following terms:

> ... I found Natalello to be a generally incredible witness. He is possessed of an undisguised dislike for the union and for what he perceives as Caternolo's interference with his attempts to obtain jobs. His bias was manifestly obvious during his testimony.

As a remedy, ALJ Kern ordered, *inter alia*, that CNP cease and desist from all further illegal acts taken against Local 13's efforts to unionize the firm and that employment be offered to those union members named in the complaint whom CNP had refused to hire. A three-member appellate panel adopted ALJ Kern's findings in all respects, but modified the relief granted by her such that CNP was directed to offer employment to only three of the eleven union members who had been denied employment. Further, the panel stated that it had "carefully examined the record and found no basis for reversing the findings." One member, however, declared that he would "not rely on the judge's reference to CNP President Natalello's 'undisguised dislike for the Union' and for Union Organizer Caternolo as a basis for discrediting Natalillo, but [found] the judge's credibility resolutions supportable on the record as a whole." CNP now urges us to reject the petition for enforcement for essentially four reasons, none of which we find persuasive.

■ **1. Natalello's Credibility.** "When the Board's findings are based on the ALJ's assessment of the credibility of witnesses, they will not be overturned unless the testimony is hopelessly incredible or the findings flatly contradict either the law of nature or the undisputed documentary testimony." *NLRB v. Thalbo Corp.*, 171 F.3d 102, 112 (2d Cir.1999) (citations and internal quotation marks omitted). CNP nevertheless argues that ALJ Kern erred in her determination that Natalello was "a generally incredible witness." In CNP's view, ALJ Kern "found CNP's president 'generally incredible' *solely* because of his 'undisguised dislike for the union and for what he perceives as [the union organizer's] interference with his attempts to obtain jobs.'" But, CNP asserts, "it is simply illogical to conclude that

a person is 'generally incredible' solely because he dislikes a particular union or even unions in general." What CNP appears to mean by illogic is that, as stated in its objections to the enforcement of the Order, "findings concerning employer witness credibility ... based solely upon expressions of opinion concerning 'the union' or its leadership, were made in disregard and/or in violation of 29 U.S.C. Section 158(c) and the First Amendment to the United States Constitution."

CNP is correct that " 'an employer's free speech right to communicate his views to his employees is firmly established and cannot be infringed by a union or by the Board.' Section 8(a)(1) [of the Act] leaves an employer ... free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain a threat of reprisal or force or promise of benefit." *Kinney Drugs, Inc. v. NLRB*, 74 F.3d 1419, 1427–28 (2d Cir.1996) (quoting *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617–18, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969)). An employer's opinions about a union organizing drive are therefore protected to the extent that they are not couched within "threats of discharge in retaliation for union activity, grants or promises to grant benefits to discourage employee support for a union, ... [or] coercive interrogations of employees concerning their union activity...." *Id.* at 1427 (citations and quotation marks omitted). Thus, in the case upon which CNP primarily relies, this Court found that unadorned management statements to the effect that it wished that its employees would not select a particular union to represent them could not serve as the basis for "a finding of unlawful, anti-union animus" because this would "violat[e] the congressional command that noncoercive expressions of views, argument, or opinion

shall not be 'evidence of an unfair labor practice.' " *Holo–Krome Co. v. NLRB*, 907 F.2d 1343, 1346 (2d Cir.1990) (quoting 29 U.S.C. Section 159(c)). CNP rightly admits, however, that *Holo–Krome* had nothing to do with a credibility finding.

The problem for CNP is that it points to no specific protected statement of Natalello's upon which ALJ Kern relied as a basis for her findings that CNP had engaged in violations of the Act. *Compare Kinney Drugs, Inc.*, 74 F.3d at 1429 (NLRB could not base finding that Act was violated upon employer statements regarding "what it believes will be the likely economic consequences of unionization" because employer "had the right" to make such assessments). There is a simple explanation for this: ALJ Kern did not find any violations of the Act based upon Natalello's general anti-union comments. She found violations based upon the credible testimony of numerous witnesses who attributed multiple statements to Natalello that clearly constituted threats of reprisal for protected activity or had a tendency to interfere with employees' exercise of their rights. 29 U.S.C. Section 158(a). ALJ Kern was entitled to credit this testimony, as against Natalello's denials, because it "was not 'hopelessly incredible' and did not contradict either the 'law of nature' or the documentary evidence." *Thalbo Corp.*, 171 F.3d at 112.

At most, Natalello's general anti-union animus was a factor in ALJ's finding that he was an incredible witness. While general anti-union sentiment may not be the basis for finding a violation of the Act, there is nothing improper in considering such sentiment in determining credibility. Indeed, a case upon which CNP heavily relies confirms that evidence of an employer's attitude towards unions "is often" material in judging credibility. *NLRB v. Colvert Dairy Prods. Co.*, 317 F.2d 44, 46

(10th Cir.1963); *see also Darlington Mfg. Co. v. NLRB*, 397 F.2d 760, 769 (4th Cir. 1968) (permitting the "use of protected statements to draw the background of the controversy and place other nonverbal acts in proper perspective"); *I'ntl Union, United Auto., Aerospace and Agr. Implement Workers of America, AFL–CIO v. NLRB*, 363 F.2d 702, 707 (D.C.Cir.1966) (permitting protected statement to be considered in placing the acts in context, including credibility of witness). Therefore, we find the ALJ's credibility decision firmly rooted in the record and supported by substantial evidence.

■ **2. Legler as CNP's Agent.** It is undisputed that the record contains numerous statements attributed to Legler that are indicative of CNP's desire to thwart any effort by Local 13 to organize the firm's workforce. CNP argues, however, that "they could not be attributed to CNP since she was not shown to have been an agent of the employer." We disagree. Whether Legler was acting as CNP's agent depends upon whether "under all the circumstances" a prospective employee "would reasonably believe that [Legler] was speaking for management and reflecting company policy." *Blaylock Elec. v. NLRB*, 121 F.3d 1230, 1234 (9th Cir.1997). The testimony here established that Legler answered the phone, responded to job inquiries, told the union applicants that no jobs were open, and noted on a message to Natalello that an applicant was "not union!" Agency has been found in similar circumstances. *See id.* at 1234 (finding agency where employee "responded to inquiries about job openings, [and] made a statement indicating that, had she known that these applicants were union supporters, she would have told them that [the employer] was not accepting applications"); *Greg Murrieta d/b/a GM Electrics*, 323 NLRB 125, 125–26 (1997) (find-ing apparent authority where secretary was assigned to distribute and collect job applications, and would talk to prospective employees and relate company's hiring needs); *Diehl Equipment Co.*, 297 NLRB 504, 504 n. 2 (1989) (secretary had apparent authority where her job "routinely involved" distributing and receiving job applications, as well as answering inquiries regarding applications). Accordingly, we conclude that ALJ Kern's finding that Legler's statements could be attributed to CNP was supported by substantial evidence.

■ **3. The Testimony of McDermott and Battaglia.** CNP contends that ALJ Kern erred by engaging in a "complete disregard" of the testimony of two of its supervisory employees, Andy McDermott and Paul Battaglia. It fails, however, to cite any specific testimony of these two witnesses which serves to refute any of ALJ Kern's findings. Our review of their testimony leads us to conclude that they had nothing of consequence to say beyond their uncontradicted assertions that they had no authority to make decisions regarding hiring or firing.

**4. Sufficiency of Evidence.** The NLRB's findings of fact are reviewed under the highly deferential substantial evidence standard. 29 U.S.C. Section 160(e); *see also NLRB v. Yonkers Associates, 94 L.P.*, 416 F.3d 119, 121–22 (2d Cir.2005). We may not set aside these findings unless we are "left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *NLRB v. G&T Terminal Packaging Co., Inc.*, 246 F.3d 103, 114 (2d Cir.2001) (internal quotations omitted). We have reviewed CNP's various claims that the evidence before ALJ Kern was not sufficient to support her conclusions, and we find them to be without merit under this standard.

For the reasons stated above, the petition of the National Labor Relations Board is GRANTED.