NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 2 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WISMETTAC ASIAN FOODS, INC., | No. 20-73768 |
| Petitioner, | NLRB Nos. 21-CA-207463 |
| v. | 21-CA-208128 |
| | 21-CA-209337 |
| NATIONAL LABOR RELATIONS BOARD, | 21-CA-213978 |
| | 21-CA-219153 |
| Respondent. | 21-CA-212285 |
| | MEMORANDUM* |
| NATIONAL LABOR RELATIONS BOARD, | No. 21-70142 |
| Petitioner, | NLRB Nos. 21-CA-207463 |
| v. | 21-CA-208128 |
| | 21-CA-209337 |
| WISMETTAC ASIAN FOODS, INC., | 21-CA-213978 |
| | 21-CA-219153 |
| Respondent. | 21-CA-212285 |

On Petition for Review of an Order of the
National Labor Relations Board

Submitted January 13, 2022**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

San Francisco, California

Before: GOULD, BENNETT, and R. NELSON, Circuit Judges.

Wismettac Asian Foods, Inc. ("WLA") petitions for review of the National Labor Relations Board's ("NLRB" or "the Board") decision that WLA violated §§ 8(a)(1), 8(a)(3) of the National Labor Relations Act ("NLRA").[1] We have jurisdiction under 29 U.S.C. § 160 and affirm. We also hold that the Board is entitled to summary enforcement of the finding that WLA violated § 8(a)(1) by promising compensation for rejecting the union. Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling.

"Decisions of the NLRB will be upheld on appeal if the findings of fact are supported by substantial evidence and if the agency correctly applied the law." *Loc. Joint Exec. Bd. of Las Vegas v. NLRB*, 515 F.3d 942, 945 (9th Cir. 2008). "[W]e may not 'displace the NLRB's choice between two fairly conflicting views, even though [we] would justifiably have made a different choice had the matter been before [us] de novo.'" *Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir. 2000) (first alteration added) (citations omitted).

1.     The Administrative Law Judge ("ALJ") found that WLA violated §§ 8(a)(1), 8(a)(3) by demoting Ruben Munoz, terminating Pedro Hernandez, and

---

**     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).
[1] 29 U.S.C. §§ 158(a)(1), 158(a)(3).

suspending and terminating Alberto Rodriguez. "To establish an unfair labor practice, the [NLRB] must show an unlawful motivation either to discourage union membership or to interfere with the exercise of protected rights." *NLRB v. Nevis Indus., Inc.*, 647 F.2d 905, 909 (9th Cir. 1981). If the Board makes this showing, "the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of protected conduct." *United Nurses Ass'ns of Cal. v. NLRB*, 871 F.3d 767, 778–79 (9th Cir. 2017) (citations and quotation marks omitted).

The ALJ's finding that WLA's adverse actions against Munoz, Hernandez, and Rodriguez violated §§ 8(a)(1), 8(a)(3) was supported by substantial evidence. WLA knew of the three employees' support for the union. WLA indicated hostility toward the union; for example, manager Frank Matheu said that "under no condition[] would he allow . . . the Union to come into the company." Matheu conceded that at least one allegation in a written warning against Munoz was false and that he did not know of at least one stated reason for Rodriguez's dismissal. WLA's stated reasons for firing Hernandez were unsubstantiated and shifted. Matheu told Hernandez that he was let go because his contract expired and gave no other reason, but Matheu testified before the ALJ that Hernandez was fired due to unsubstantiated claims of creating a hostile work environment. This evidence provides substantial support for the ALJ's findings. *See Healthcare Emps. Union,*

3

*Local 399 v. NLRB*, 463 F.3d 909, 922 (9th Cir. 2006) ("[A] flimsy or unsupported explanation may affirmatively suggest that the employer has seized upon a pretext to mask an anti-union motivation." (alteration in original) (quoting *NLRB v. Dillon Stores*, 643 F.2d 687, 693 (10th Cir. 1981))).

2.      The ALJ found that WLA violated §§ 8(a)(1), 8(a)(3) by refusing to re-hire Hernandez, Fanor Zamora, and Jeremiah Zermeno. Refusing to hire an applicant because of his union activities is an unfair labor practice. *See Frankl v. HTH Corp.*, 650 F.3d 1334, 1362 (9th Cir. 2011) (citing *FES, a Div. of Thermo Power*, 331 N.L.R.B. 9, 12 (2000)). In determining if an employer refused to hire an applicant due to union activities, the Board applies the motivation test from *Wright Line, a Div. of Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980), as stated in *FES*:

> (1) that the [employer] was hiring, or had concrete plans to hire, at the time of the alleged unlawful conduct; (2) that the applicants had experience or training relevant to the announced or generally known requirements of the positions for hire, or in the alternative, that the employer has not adhered uniformly to such requirements, or that the requirements were themselves pretextual or were applied as a pretext for discrimination; and (3) that antiunion animus contributed to the decision not to hire the applicants.

*FES*, 331 N.L.R.B. at 6 (footnotes omitted) (citing *Wright Line*, 251 N.L.R.B. at 1083). If the Board "meets this prima facie burden, thus creating an inference that union animus was a motivating factor in the decision to hire, the employer must . . . demonstrate that it would have made the same decision in the absence of the

4

discriminatees' union affiliation." *Blaylock Elec. v. NLRB*, 121 F.3d 1230, 1233 (9th Cir. 1997) (citation omitted).

As to the first *FES* factor, WLA made at least 21 new hires in warehouse positions after Hernandez, Zamora, and Zermeno applied. As to the second *FES* factor, Hernandez, Zamora, and Zermeno applied for the positions they had worked in before their dismissal. As to the third *FES* factor, WLA knew or likely knew that these employees supported the union. WLA many times showed hostility toward the union. And a finding of unfair labor practices does not require an employer to discriminate against every known employee who supports the union.

3. The ALJ's finding that WLA violated § 8(a)(1) by soliciting employees to revoke union authorizations is supported by substantial evidence. *See NLRB v. Deutsch Co., Metal Components Div.*, 445 F.2d 902, 906 (9th Cir. 1971). WLA mailed employees a letter explaining how to revoke authorization with a sample revocation letter attached. WLA held meetings in which sample revocation forms were distributed, and its labor consultant told workers in those meetings that "the Union is not going to win" the election. The consultant testified that WLA wanted to explain "how can [employees] get rid of this union? How can [employees] retrieve [their] union authorization card . . . because [employees are] tired of this?" But there is no evidence that any employee ever inquired with WLA about revoking union authorization.

There is also substantial evidence of a coercive environment. Following the union's recognition request, WLA stationed armed security guards at the entrance to the warehouse. The day before the first union election, WLA held a mandatory meeting at which armed security guards stood in front of the door. At the meeting, Matheu said that "under no condition[] would [Matheu] allow . . . the Union to come into the company."

4. As WLA does not dispute that it violated § 8(a)(1) by promising to compensate workers for rejecting the union, the Board is entitled to summary enforcement of this portion of its order. *See Gardner Mech. Servs., Inc. v. NLRB*, 115 F.3d 636, 643 n.2 (9th Cir. 1997). The other findings that the Board claims were uncontested (addressed above) were contested.

**AFFIRMED**.